

**SIGNED this 25th day of April, 2013.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 11-11770-CAG |
| | § | |
| JAMES W. SEE, | § | CHAPTER 7 |
| | § | |
| Debtor | § | |

| | | |
|---|---|---|
| VLASTA O. SEE, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | ADV. NO. 11-01243-CAG |
| v. | § | |
| | § | |
| JAMES W. SEE, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
### FOR PARTIAL SUMMARY JUDGMENT

Came on for consideration the above-numbered adversary proceeding and, in particular, Plaintiff's Motion for Partial Summary Judgment filed January 23, 2013 (ECF No. 141). During the pendency of the bankruptcy case, the Court had jurisdiction over

1

this matter pursuant to 28 U.S.C. § 1334 and this matter constituted a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (G), (I), (K), and (O). The Court dismissed the underlying bankruptcy case on October 18, 2011, and subsequently opted to retain jurisdiction over this adversary proceeding pursuant to ***Querner v. Querner***, 7 F.3d 1199 (5th Cir. 1993).[1] For the reasons stated in this Order, the Court is of the opinion that Plaintiff's Motion should be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

This adversary proceeding is the unfortunate result of a protracted and contentious history between family members. Plaintiff—a Texas resident incapacitated by a stroke—is represented by her son and legally appointed guardian Ervin See, Jr. ("Guardian"). Defendant is Plaintiff's son and Guardian's brother.

Defendant moved into Plaintiff's home in 1997 and continued to live with Plaintiff until 2011 when Plaintiff moved to a nursing home to receive full-time medical care. Prior to her husband's death, Plaintiff and her husband were ranchers and farmers on several parcels of land in Burleson County, Texas. These parcels of land were conveyed to a testamentary trust (the "Trust"). At some point after her husband's death, Plaintiff purchased two of the parcels of land from the Trust and reacquired the property. Plaintiff then conveyed a life estate in the two parcels of land to Defendant in exchange for secured promissory notes. One of these parcels, a 56.81-acre tract, is known in the family as the "Bottom Land" and "the bottom."

---

[1] In *Querner*, the Fifth Circuit stated that notwithstanding the general rule that dismissal of a bankruptcy action ends the reach of a bankruptcy court's jurisdiction into related adversary proceedings, a bankruptcy court may opt to retain jurisdiction over an adversary proceeding in the interests of economy, convenience, fairness, and comity. 7 F.3d at 1201-02. At a hearing on October 21, 2011, the Court ruled that, considering the interests stated above, it would retain jurisdiction over the adversary proceeding (ECF No. 27, at 4-6).

In 2007, Defendant took out a loan from Capital Farm Credit ("CFC"), pledging the Bottom Land and miscellaneous farm equipment as collateral.[2] CFC secured its interest with a promissory note with a value of $550,000 (the "CFC Note"). After several years, during which Defendant defaulted on his obligations, Defendant found himself facing both a judicial foreclosure and a forced sheriff's sale of his property interests.[3] In an effort to stop the forced sale, Plaintiff purchased the security interest CFC Note and farm equipment on June 2, 2009, and purchased the Bottom Land property on the courthouse steps the next day.

Plaintiff suffered a stroke on June 24, 2009, at which point a state court appointed Guardian as guardian of both Plaintiff's person and estate. Shortly thereafter, Defendant produced two contracts and provided them to Guardian. One contract is dated June 24, 2009, and the other is dated June 5, 2009 (the "Contract").[4] Plaintiff filed this adversary proceeding, asking the Court to invalidate both contracts as well as award damages to Plaintiff for Defendant's alleged breach of contract, conversion, fraud, embezzlement, defalcation, and breach of fiduciary duty (ECF No. 111-1). Plaintiff then filed this Motion for Partial Summary Judgment, asking the Court to find the Contract unenforceable as a matter of law (ECF No. 141).

### PARTIES' CONTENTIONS

The Contract purports to (1) transfer Plaintiff's interest in the Bottom Land to

---

[2] Plaintiff's Original Complaint states that the 2007 loan was a modification to an "initial loan" from CFC, which Defendant obtained in 2006.

[3] The factual allegations in Plaintiff's Original Complaint (ECF No. 1) detail the many financial transactions leading up to the foreclosure and sheriff's sale of the Bottom Land property. As those facts are not relevant to this summary judgment motion, the Court will not recite them here.

[4] Plaintiff provided a copy of the Contract—noted as Plaintiff's Exhibit B—with her Motion for Summary Judgment.

3

Defendant subject to the promissory note Plaintiff purchased from CFC, (2) reduce the amount of debt Defendant owes Plaintiff from $550,000 to $350,000, and (3) compensate Defendant for his care of Plaintiff from 1997 to the present day. Plaintiff claims the Contract is unenforceable in its entirety.

First, Plaintiff argues that the language purporting to transfer the interest in the Bottom Land to Defendant does not satisfy the statute of frauds because the Contract, by only referring to the land in question as "a 55.81 acre tract of land that we refer to as the bottom," does not sufficiently describe the property to be sold. Pl.'s Ex. B. In support, Plaintiff offers the sworn affidavit of Guardian, who wrote "[the] property is not known generally as the 'Bottom' or the 'Bottom Land' by others outside the family in the area – this is simply a nickname created and used within the See family." Pl.'s Ex. A. Further, Plaintiff argues that the See family does not own a 55.81-acre tract of land, but rather a 56.81-acre tract. Without any further specificity in the Contract, Plaintiff claims the Contract is not enforceable under Texas law.

Plaintiff further asks the Court to invalidate the second provision of the Contract, which purports to modify the debt on the Bottom Land Defendant owed Plaintiff after Plaintiff acquired the debt from Capital Farm Credit. Pl.'s Ex. B, at 1. Under the terms of the Contract, Defendant would owe a reduced principal amount of $350,000 plus 5 percent interest to Plaintiff and would make monthly payments that amount to "as much as [Defendant] can afford to pay."[5] *Id.* In fact, "it would have been okay if [Defendant] didn't pay anything at all." Pl.'s Ex. C, at 134. Such payments would be deducted from the $350,000 principal until Defendant paid the entire debt, at which point Defendant

---

[5] The original Capital Farm Credit Note's original principal sum was for $501,301.00 and was renewed for $550,000. Pl.'s Ex. A-6. Further, Defendant acknowledged during his deposition that, at the time Plaintiff bought the Capital Farm Credit Note, she could have sought $500,000 from Defendant. Pl.'s Ex. C, at 135.

4

would acquire outright ownership of the property. *Id.* Plaintiff argues that the modification of the CFC Note is not supported by consideration, and that Defendant's obligation to pay only what he can afford to pay is an illusory and unenforceable promise.

The final provision of the Contract seeks to compensate Defendant for providing care to Plaintiff while living with her for over 12 years, as well as to pay Defendant for future care. The Contract provides that Defendant shall be paid 50 dollars per day, backdated to April 1, 1997, and continuing "as long as [Defendant] cares for [Plaintiff]." Pl.'s Ex. B, at 2. The Contract further provides that, should Plaintiff require more intensive care, "the compensation rate to [Defendant] shall be increased to reflect the going rate for that type of caregiving." *Id.* The compensation to Defendant would be applied to the $350,000 debt, and then would be paid to Defendant directly should the $350,000 ever be paid in full. *Id.* If the Contract is enforceable, the $50 daily payments would reduce the total debt owed by over $200,000.

Plaintiff provides two bases to invalidate this portion of the Contract. First, Plaintiff asserts that Texas law does not allow gratuitous service in the past to serve as consideration after the fact sufficient to create an enforceable contract. Plaintiff therefore asserts that the promise to pay $50 per day from April 1, 1997, to June 5, 2009, is an unenforceable promise. Second, because Defendant did not make a promise to care for Plaintiff, and could presumably walk away from caring for Plaintiff at any time, Plaintiff argues that Defendant's obligation under the Contract is illusory and therefore the Contract is unenforceable.

Defendant admits that, in "some cases," the property description in this case would not be sufficient to satisfy the statute of frauds, but argues that this case is

5

distinguishable because of the ongoing relationship between the parties (ECF No. 151).[6] Defendant argues that "there is no doubt that each of the signatories knew precisely what they agreed to and why," and that "only one tract of land referred to as the bottom" exists within the family. *Id.* Defendant further claims that the Contract "has a very particular description of the land involved such that no confusion could result between the parties to the [C]ontract." *Id.* Finally, Defendant argues that the courts favor validity of contracts, and such considerations should weigh in favor of this Court finding the description of property sufficient under the statute of frauds. *Id.*

With respect to the modification of the CFC Note, Defendant claims the modification itself was a "settlement agreement." *Id.* The consideration for the new agreement, he argues, was for Plaintiff to have the peace of mind of knowing that there would be "some semblance of civility between her children during her lifetime." *Id.* The modification of the CFC Note was therefore, according to Defendant, "only illusory to an outsider." *Id.*

As for the final provision of the Contract, Defendant claims that the provision compensating Defendant for his care of Plaintiff was designed to "preserve for herself the right to spend her last days in her own home" as well as to provide a home for Defendant "where no other existed." *Id.* Finally, Defendant urges the Court to consider the Contract in the context of all of the facts of the case, rather than "in a vacuum." *Id.*

At the hearing held on March 6, 2013, Plaintiff re-urged the arguments stated in her Motion for Summary Judgment, arguing the Court should declare the Contract

---

[6] Throughout his Response to the Motion for Summary Judgment, Defendant took particular umbrage to what he considered "aspersions" on his intentions cast on him by Guardian and other members of his family. While such allegations may have relevance in the underlying suit, they carry no weight with the Court regarding this Motion for Summary Judgment and will therefore not be considered.

unenforceable. Defendant argued his Response was "aimed at highlighting" factual issues in the case. Further, Defendant argued that the Capital Farm Credit Note contains a technical description of the bottom land property and that "we have to assume or read that into the [C]ontract" by reference. If the Court were to decline to do so, Defendant argues that the Court should allow a jury to determine whether the parties meant to incorporate the CFC Note by reference. Defendant did not provide any evidence to the Court, either with his Response or at the hearing, but rather presented his case solely through argument of counsel.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must

7

be of sufficient quality so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita,* 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007). In determining whether a genuine issue of material fact exists, the nonmoving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. A genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts. *Leon Chocron Publcidad Y Editoria, S.A. v. Jymm Swaggart Ministries*, 990 F.2d 1253 (5th Cir. 1993).

A. <u>The Description of the Property</u>

Plaintiff objects to the transfer of land in the Contract because the description of the property is allegedly insufficient to satisfy Texas law. The exact language of the Contract states that "the property involved is a 55.81 acre tract of land that we refer to as the bottom." Pl's. Ex. B. No other language in the Contract describes the property in question. Section 26.01 of the Texas Business and Commerce Code codifies the legal concept known as the "statute of frauds," which states that certain contracts must contain specific information in writing to be enforceable. *See generally* Tex. Bus. & Comm. Code § 26.01 (West 2012). One such requirement applies to sales of interest in real property. *Id.* at 26.01(b)(4). The standard for what constitutes a sufficient description

8

has been well-settled by Texas courts, so much so that the Texas Supreme Court has stated that the rule almost compels "repetition by rote." **Morrow v. Shotwell,** 477 S.W.2d 538, 539 (Tex. 1972). To be sufficient, "the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." *Id.* (internal citations omitted). Moreover, "an unidentified larger, identifiable tract is insufficient to satisfy the statute of frauds." **May v. Buck,** 375 S.W.3d 568, 574-75 (Tex. App.—Dallas 2012, no pet.).

In *Morrow*, the property described consisted of "acreage which lies north of a line running on a course of north 75 east from the northeast corner of First Tract to the west boundary line of public highway no. 77." 477 S.W.2d. at 540. The Texas Supreme Court held that description of the property to be insufficient to satisfy the statute of frauds. In so finding, the court noted that the language of the property description did not provide information sufficient for a surveyor to identify the tract with reasonable certainty. *Id.* at 540.

Notably, the court considered the fact that, at the time the parties agreed to the sale of the property described, there was "little doubt that the parties knew and understood what property was intended to be conveyed." *Id.* The court stated, however, that "the knowledge and intent of the parties will not give validity to the contract. . . ." *Id.* (citing **Rowson v. Rowson,** 154 Tex. 216 (Tex. 1955)). Because the intent of the parties is irrelevant in determining sufficiency for purposes of the statute of frauds, the court did not take that evidence into account. *Id* at 541.

Texas courts have also highlighted the rule in *Morrow* that a contract that refers to another writing containing a description of the property may be sufficient to satisfy the

9

statute of frauds. ***Reiland v. Patrick Thomas Properties, Inc.,*** 213 S.W.3d 431 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The contract, however, must explicitly refer to said writing. ***Morrow,*** 213 S.W.3d at 539-40 (noting that the contract did not refer to any other existing writing). In *Reiland*, the property was surveyed and a copy of the metes and bounds created at the time of the survey was attached to the contract. *Id.* at 437. The court, however, did not consider the attached document because "there [was] no reference to such [survey] in the contract which must be looked to in determining whether the statute of frauds is satisfied." *Id.* (citing ***Matney v. Odom,*** 210 S.W.2d 980 (Tex. 1948)).

A nickname for the property in question may be sufficient to satisfy the statute of frauds, but only if the property is notoriously known by that name throughout the community in which the property is located. ***Living Christ Church v. Jones,*** 734 S.W.2d 417, 420 (Tex. App.—Dallas 1987, writ denied). The contract in *Living Christ Church* involved two parcels of property, referred to as the "Fernald Property" and the "Broadmoor Garage." *Id.* at 419. The Court of Appeals noted that "there [was] no pleading or evidence that the properties in question [had] been notoriously known in the locality for a period of years as the 'Broadmoor Garage' or the 'Fernald Property.'" *Id.* at 420. Without such evidence, simply referring to the parcels of property by their nicknames was insufficient to satisfy the statute of frauds. *Id.* at 420-21. Similarly, a Texas Court of Appeals held that a contract referring to a parcel of real property as "Airport Security Parking" was insufficient after considering evidence from the owner of the parcel that the nickname referred only to the business operating on the land, rather than the land itself. ***Dunworth Real Estate Co v. Chavez Properties***, No. 04-07-00237, 2008 WL 36222 (Tex. App.—San Antonio 2008, no pet.).

10

In this case, the Contract refers solely to "a 55.81-acre tract of land we refer to as the bottom." There are no metes and bounds listed, no guidance as to where to find the "bottom land," and not even a name of the county in which the property is located. This description is more meager than the one discussed in *Morrow*, which at the very least included highways as a reference. Moreover, the Contract refers to a 55.81-acre tract, when in fact the property in question is 56.81 acres.[7] The nickname "the bottom land" is also insufficient satisfy the statute of frauds. Guardian stated in his affidavit that the nickname "the bottom land" is not known outside of the family, meaning that it cannot fit the definition of notoriously known throughout the community. Finally, the Contract does not reference any other writing that describes the property. Defendant's argument that the CFC Note provides a full description of the property and that "we have to assume or read that into the [C]ontract" is without merit as well.

Defendant argues that there is no doubt what the parties intended at the time they executed the Contract, and that there should be no doubt as to the location of the property in question. This argument fails to take into account the court's statement in *Morrow* that the intent of the parties is irrelevant. The description must be sufficient for an objective outsider familiar with the area to locate the property with reasonable certainty. The intent of Plaintiff and Defendant at the time they entered into this agreement is not enough to satisfy the statute of frauds. Not only is there no evidence to suggest that the parties meant for the CFC Note to be incorporated into the Contract by reference, but even if such evidence did exist, the Court could not rely upon it because the Contract itself does

---

[7] The Court acknowledges the high probability that the acreage listed in the Contract is a clerical error. Defendant, however, provided no evidence by way of affidavit or deposition testimony that such an error occurred. Defendant instead relied upon arguments from counsel in the pleadings, which do not constitute competent summary judgment evidence and therefore are not to be considered.

11

not reference any other writing. Considering all of the arguments presented by both parties, the Court finds the description of the property in the Contract insufficient to satisfy the statute of frauds and the transfer of property is therefore unenforceable.

B.     Modification of the Debt Obligation

Plaintiff next argues that the provision in the Contract designed to modify the debt obligation Defendant owes Plaintiff is unenforceable because it is a modification of an existing contract without requisite consideration. Consideration, a requirement for all enforceable contracts, is "a present exchange bargained for in return for a promise" and "consists of either a benefit to the promisor or a detriment to the promisee." ***Roark v. Stallworth Oil & Gas, Inc.,*** 813 S.W.2d 492, 496 (Tex. 1991). Any modification to an existing contract must be supported by new consideration. *See* ***McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,*** 66 F.3d 89, 93 (5th Cir. 1995) (noting that consideration from an original contract cannot constitute consideration for a subsequent modification). This concept, known as the "pre-existing duty rule," applies to all modifications, supplements, and new contracts. *Id.* In such cases, "merely offering the pre-existing duty [a party] had already contracted to perform cannot serve as consideration for the change." *Id.* Modern jurisprudence urges courts to disfavor solely relying upon the pre-existing duty rule, particularly "if even minimal consideration supports the contract." ***Johnson v. Seacor Marine Corp.,*** 404 F.3d 871, 875 (5th Cir. 2005) (internal citations omitted). As long as the parties involved "gain some legally enforceable right . . . *which they previously did not have*, consideration is present. *Id.* (citing ***Morrison Flying Service v. Deming Nat'l Bank***, 404 F.2d 856, 861 (10th Cir. 1968)) (emphasis added).

12

Before Plaintiff purchased the CFC Note, Defendant was bound to make payments on the note to CFC for the note's full value. After Plaintiff purchased the Note from CFC, Defendant's obligation shifted and he became obligated make payments to Plaintiff. At the time Plaintiff and Defendant executed the Contract, Defendant was therefore already under an obligation to make payments to Plaintiff on the CFC Note. The Contract purports to lower the total amount of the debt obligation, and also leaves Defendant with an option to make no payments at all. Under such an arrangement, Defendant is acquiring a benefit—a reduction in the total amount of debt owed—while Plaintiff takes on a detriment—giving up the legal right to collect the full amount of the debt she purchased from CFC. Defendant, however, gives up no detriment and Plaintiff acquires no additional rights. Such a one-sided agreement is not a "bargained for exchange" and is not supported by consideration. Although the Court acknowledges that reliance on the pre-existing duty rule is disfavored, there is not a shred of evidence to suggest that the Contract is supported by consideration of any kind.

Defendant, in his Response to the Motion for Summary Judgment, claims that the benefit Defendant gave Plaintiff was the peace of mind knowing that altering Defendant's debt obligations would help ensure that Plaintiff's children would be less likely to fight over property after her death. Notwithstanding this claim, which is dubious at best, Defendant provided no competent summary judgment evidence to support this claim. The Court will not consider Defendant's bald assertions without specific evidence to raise a genuine issue of material fact. Because Defendant did not provide such evidence, the Court finds the provision of the Contract modifying Defendant's debt obligation to Plaintiff is not supported by consideration and is therefore unenforceable.

C. <u>Defendant's Care for Plaintiff</u>

The third provision of the Contract purports to compensate Defendant for taking care of Plaintiff while he lived—and continues to live—with her. This provision can be split into two parts, the first of which compensates Defendant at a rate of $50 per day for every day between April 1, 1997, and June 5, 2009. The second continues to pay Defendant $50 for every day for which Defendant continues to care for Plaintiff after June 5, 2009, and increases to an unspecified amount should Plaintiff require additional care. Defendant admits in his Response to the Motion for Summary Judgment that the compensation provision of the Contract "cannot stand alone," and that Defendant seeks to enforce this provision along with the rest of the Contract (ECF No. 151, at 3). Because Plaintiff seeks to invalidate the Contract in its entirety, however, the Court will address the issue.

Plaintiff argues the provision paying for past care is unenforceable because it lacks consideration. Past consideration, "if it imposed no legal obligation at the time it was furnished, will support no promise whatever." **Witt v. Wilson**, 160 S.W. 309, 310 (Tex. Civ. App.—Austin 1913); **Roark,** 813 S.W.2d at 497 (Gonzales, J. dissenting). Consideration, rather, is "a *present* exchange bargained for in return for a promise." **Roark,** 813 S.W.2d at 492 (emphasis added); s*ee also* **Mason v. Babin**, 474 S.W.2d 809 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.) (holding that a contract requiring the appellant to perform duties he had already fulfilled was a gratuitous promise and was not supported by valid consideration).

The evidence provided by Plaintiff indicates that contract was meant to compensate Defendant for services already provided. Pl.'s Ex. C at 135-36. Indeed,

14

Defendant testified at deposition that Plaintiff told him she wanted "to help pay [Defendant] back for all the stuff" he did for Plaintiff. *Id.* At the time Defendant lived with and allegedly began caring for Plaintiff, there was no present exchange or bargain in which Plaintiff agreed to pay Defendant. Moreover, the parties imposed no legal obligation on each other at the time Defendant moved in with Plaintiff. This is merely a gratuitous promise, and one that Plaintiff had no legal obligation to uphold. The Court therefore finds the provision of the Contract paying Defendant $50 per day between April 1, 1997, and June 5, 2009, unenforceable.

Consideration is also conspicuously absent from the agreement to pay Defendant $50 per day (and increasing by unspecified amounts should Plaintiff require additional care) from June 5, 2009, for "as long as [Defendant] cares for [Plaintiff]." Assuming the Contract was validly executed[8] and that Plaintiff agreed to give Defendant $50 per day, Defendant gave up nothing in return. Defendant made no promise in the Contract to care for Plaintiff, was not obligated to care for Plaintiff, and was free to walk away at any time. In short, Defendant did not incur the legal detriment that necessitates the creation of an enforceable contract.

Defendant again urges the Court to consider the context in which the parties executed the Contract. Defendant claims he was giving Plaintiff the peace of mind of knowing that she would be in her own home under the care of one of her own sons, and that is sufficient consideration for this contract. Notwithstanding the dearth of evidence on this issue, the wording of the Contract provides Defendant with the freedom to walk away from caring for Plaintiff at any time. The Court does not see how such a provision

---

[8] Notwithstanding the allegations in Plaintiff's Complaint, the Court assumes the contract was validly executed for the purposes of this Motion for Summary Judgment.

gives Plaintiff the peace of mind that she will be guaranteed care for the rest of her life. Defendant's further arguments that this provision of the Contract was meant to provide Defendant with a place to live "where no other existed" only seeks to further convince the Court that Plaintiff's promise to pay was a gratuitous promise, not an enforceable contract. This provision is unenforceable as a matter of law.

### CONCLUSION

Defendant urges the Court not to consider this contract in a vacuum, and instead asks the Court to review the Contract "in light of the surrounding circumstances." The Court, however, received no competent summary judgment evidence regarding these "surrounding circumstances." More importantly, the Court received no evidence to suggest a genuine issue of material fact exists in this case. Plaintiff provided a legal basis, as well as supporting evidence, for finding all three provisions of the Contract unenforceable. Defendant's arguments in response cannot be considered contradictory evidence because they were contained solely in Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and were not provided as testimony or otherwise competent summary judgment evidence. The Court therefore determines that there is no genuine issue of material fact and that the Court may resolve the case as a matter of law. Because the Court finds all three provisions of the Contract unenforceable,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is hereby GRANTED.

###